Matthew Wessler, right? Yes, good morning, Your Honor. Good morning. May it please the Court, Matthew Wessler for the plaintiff's appellants. With the Court's permission, I'd like to reserve four minutes for rebuttal. Keep your eye on the clock, we'll try to help you. The key question in this appeal is whether Google can show that its disclosures unambiguously informed users that Chrome would send their personal information to Google even when sync is not enabled. To answer that question, all agree a court must focus on how a reasonable user would interpret Google's disclosures. As this Court put it in Facebook tracking, the relevant question is considering the disclosures as a whole, would a user reasonably expect that Google would have access to a user's individual data? Counsel, the Brown case seemed to have alleged essentially the same facts of what you did and survived. What's your response to why Brown should control in this case? Well, I mean, I think Brown is useful here because it suggests, I think, how the district court went wrong here and how it understood the proper inquiry there. What it did there was it looked at the actual disclosures, just the face of the disclosures, and it looked at those and it said, well, did Google unambiguously tell users that it was going to, that their information would be sent to Google if they used incognito browsing? And it said, no, the disclosures did not unambiguously inform users that, in fact, they basically said the opposite. The same is true here. The disclosures in this case tell users not just that, not what Google says, which is that Chrome users' information will be sent to Google when they're not synced. It actually said exactly the opposite in the same way that the disclosures said for incognito mode. The problem here, and what went wrong, I think, below, is that the district court sidestepped those disclosures in favor of a back-end inquiry into the character of the information that Chrome would send to Google compared with other browsers. So Mr. Wessler, what are we to do with the fact that the district court appears to have decided this on different grounds than either party here is urging? Do we remand? Can we reach the underlying consent issue and bypass the browser-agnostic question?  I mean, I do think this court can do either, although I think the latter of those two options certainly is available to this court, because the question just asks, what do the disclosures say, and do they unambiguously—this is just a sort of level set here—this is Google's affirmative defense on consent. So what Google has to be able to establish is that its disclosures unambiguously inform users that Chrome will send personal information to Google when those users have not synced. And if you look at the Chrome privacy notice, it says in just plain English that that won't happen. It tells users—and this is just to point the court right to the document. First of all, it's called, just so we're all clear about it, the Chrome privacy notice. It directs users that if they are interested in figuring out whether their data will be sent to Google when they use Chrome, they should look at the Chrome privacy notice. And it says—and I'm on just—so we're all on the same page—ER 357 and 358. And if you look at those pages, what you'll see—and these are the first two pages of the Chrome privacy notice—okay, what you'll see is that the first substantive section of the document discusses browser modes. And the first two sentences of that section tell a user—and I'm just going to quote here that, quote, you don't need to provide any personal information to use Chrome. And that Chrome, quote, has different modes that you can use and that privacy practices are different depending on the mode that you're using.  Counsel, let me ask you this. Our now current Ninth Circuit colleague, Judge Koh, was sitting as the district judge originally on this. Is it your view that she correctly interpreted the facts and law in this case? Correct, Your Honor. She looked at this document, the one I was just quoting from, the Chrome privacy notice, and she held that it made, quote, specific representations that users' personal information wouldn't be sent to Google. It's not a difficult conclusion to reach given the language that I just read. It also, for that matter, was the view that Google's own employees shared about the way that this all worked. When they were asked, does Chrome send users' personal information to Google if those users are not synced, they said no. And you know, the record in this case is shot through with examples of Google employees recognizing that the consent system that Google had for Chrome was just completely broken. Mr. Wessler, that was on a motion to dismiss, and this comes to us on summary judgment. This is a question I may ask of your friends as well. What else came in between the motion to dismiss and the summary judgment that would distinguish Judge Koh's original order? We don't think there's anything that would distinguish what she said. This is, again, Google raised an affirmative defense. That wasn't decided at the motion to dismiss. The only thing there that was being tested was the sufficiency of the complaint to state a claim. But the standard that this court applies when considering whether a defendant has satisfied its affirmative defense is what a reasonable user would understand about the disclosures. And that question can just be looked at based on the plain text of the relevant disclosures. There isn't anything beyond the language that's included in the Chrome privacy notice that I think that would at all matter regarding whether, as a matter of law, Google unambiguously disclosed this particular practice to any of its Chrome users. Counsel, at page 51 of your brief, somewhat rhetorically you say, the question at the end of this case is what a reasonable user would expect when reading that promise, not what a federal judge understands about it after discovery is complete in an hours-long evidentiary hearing on the underlying technical details. If we were to hypothetically agree with you that the district court, in the light most favorable to you, got the consent issue wrong, what would you be asking us to do here? Well, I think this gets back to Judge Johnstone's question. I do think there are two possible paths. One would be to remand for consideration of this question under the controlling and appropriate framework. I do think, however, that that framework essentially boils down to a question of what the disclosures say and whether they unambiguously disclose the practice. And here, you know, Google had the burden to come in and show unambiguously that it told people, we will do this. And the disclosures... Does that mean that you're asking us to say that in the light most favorable to you, a trier of fact could find that there wasn't the appropriate consent and send it to trial? Correct. I definitely think that's an option that exists for this court. And again, I just, I mean, I just point you to that provision that I just read, which is about as clear as it gets that when users, what users were told when they looked at this Chrome privacy notice was, if you don't sync, your personal information will not be sent to Google. Counsel, let me just ask you this. I'm certainly not an expert in technical matters, but I use them a lot, use a lot of programs. And as I think about it, I can't remember a time when I ever read cover to cover the disclosures that go along with any of those programs. And when I do glance at them on occasionally, they are closer to hieroglyphics than standard English. Does it matter for purposes of our analysis of what the reasonable user would understand that almost all these disclosures are written in, from their perspective, hieroglyphics? The plain English, I get it, but does that, should that play any role in our understanding of what a reasonable user would experience? I think, I think in this case it does not. I think we accept for this case that the disclosures that Google has control the consent question. I do think if the language that a party were to rely on was, you know, technical, dense, jargon-laden, coded language that no normal user would understand, that certainly would play into the relevant inquiry. Like browser agnosticism, maybe? Like browser agnosticism. I mean, I would submit, Your Honor, that unless you are a full-stack engineer who is experienced in the way that browser interactions with websites work, you will have no idea and would have no reason to expect that that would be relevant at all to your understanding of or expectation about whether Google is surveilling you across the Internet. Instead, what would be relevant to you is what Google would tell you about those practices in the documents it's identifying as governing the privacy practices. From your perspective, the disclosure in this case is clear, a reasonable user would understand that absent their taking certain actions, their information would not be shared. Absolutely. That's exactly correct, Your Honor. And, you know, about the only way that, and I realize there were two district judges in this case, but the second district judge reached the conclusion that somehow Google had unambiguously told everybody that this was going to happen, was to ignore the actual document that governs this practice entirely, the Chrome Privacy Notice, in favor of this more generalized Google privacy policy. And, you know, on appeal, Google relies, I think, quite heavily on that separate document. And it says, look, don't worry about the Chrome Privacy Notice, even though we're talking about Chrome users and we're talking about data that Chrome users, that's being sent by these users' use of Chrome to Google. Don't look at the Chrome Privacy Notice, focus instead on this general privacy policy. But there are a number of problems with that, even... Your argument is that even were we hypothetically to do that, we would look at stuff like on ER 328, the activity we collect may include Chrome browsing history you've synced to your Google account, and I'm going to be asking your friend about this, or 346, your Chrome browsing history is only saved to your account if you've enabled Chrome synchronization with your Google account. Or on ER 327, Your Honor, the information Google collects and how that information is used depends on how you use our services and how you manage your privacy controls. And then, Your Honor, on ER 343, directing users to go to the following privacy notices that provide additional information about Google services, one of which is the Chrome Notices, are examples of language in the privacy policy that are explicitly telling users, look, if what you care about is whether Chrome is going to send your personal information to Google, go and look at this other document which will tell you exactly how to protect yourself if you don't want that to happen. Mr. Russler, can I, I guess, ask a different question about the applicable law here? These are state law claims, and we see the reasonable user come up. I'm struggling a little bit to find a state case from where that develops. I'm not sure it matters too much to who wins today, but what's your best anchor for these questions in the state law that we are obligated to apply? So we don't really have a great case to provide you, you know, under California law, except to say that the standard that this Court has adopted and has said derives from California law is that standard. I think it is, you know, consistent with the way that courts understand the question regarding privacy claims and consent. I will also note, Your Honor, that, you know, we're not just talking about privacy claims here. There is also a contract claim, a breach of contract claim, and certainly for that claim, all you would do in that claim, regardless of, you know, a reasonable user standard, is you would just look at the plain terms of these documents, and you would look at them, and you would say, does this clearly disclose this, or does it clearly disclose that, and you would reach that conclusion without needing to engage in any additional inquiry. And so... And that's your primary thrust, is it not?  This is a contract law claim, basically. Yep. You just look at the disclosures, and they tell you one way or the other. Now, Google didn't need to say the things it said in the Chrome privacy notice about, you know, about how it was going to—how users could protect themselves from being tracked around the Internet by Google, but it chose to make an affirmative statement, and by choosing to make that affirmative statement, it cannot now come in and claim to the contrary that somehow users have unambiguously consented to the very thing that it told them it wasn't going to do. I reserve the rest of my time for rebuttal. I'm going to save the balance of your time. Thank you. Absolutely. Mr. Shapiro, please. Good morning. Good morning. May it please the Court. Andrew Shapiro for Google. This is a case brought by six individuals, and they don't dispute that they were shown a concise disclosure informing them that when they visit sites that use Google services like ads and analytics, Google receives the data at issue in this case. They don't dispute that they clicked I agree in response to that disclosure, and again clicked I agree in response to similar disclosures. Okay. Well, that's true. But I still struggle with the fact the standard that we're looking at here, Mr. Shapiro, is what a reasonable user would understand. I cannot imagine that a reasonable user would have ever had the concept of browser agnosticism enter his or her mind. I am struggling with how looking at the material, particularly the earlier material that specifically says it won't be used, they would understand it was going to be used to everybody. What's your best argument based on the facts that a reasonable user would come out where Google is asking us to come out? Your Honor, I agree with you entirely that a reasonable user does not need to understand what browser agnostic means. A reasonable user should know that Chrome is a browser. I think that's relevant. We believe a reasonable user would understand that your Chrome browsing history is the history of browsing you do on Chrome, whereas data that Google receives when you visit sites that use Google services, like ads and analytics, is data that Google receives regardless of what browser you use. What are we to do there, then, of the conflict language? So sure, there might be all of these other agreements that Google enters into with its users, but then Google says that if these terms conflict with your specific service, and the users agree to this, it'll be governed by Chrome's terms, not all of these other Google terms. Yes, that's correct, and there is no conflict here. And I can take the two supposed promises that the plaintiffs have pointed to in this case, which by the way, no person has ever construed the way they construe them, and that these plaintiffs didn't construe it that way. There's no evidence that anyone ever construed them that way. But let's see what those promises say. The first one says you don't need to provide any personal information to use Chrome, and What page are you on? This is at, I think, ER 13, I'm sorry, not 1380, it is 357, there's one version of it. I'll take your help, Your Honor, because I apologize for that, because we used the wrong page. I just want to make sure I'm on the right page with what you're saying. No, thank you, and I should have had that. No, no, go ahead. So there are essentially two main promises, or supposed promises, that the plaintiffs are focusing on here. The first one is you don't need to provide any personal information to use Chrome. So I think we all actually agree that what a court should be doing here is a holistic interpretation of what would a reasonable person take that to mean. And that's, by the way, what the district court did. That plainly refers to being able to use Chrome to browse the web without signing in or creating an account, unlike, say, TurboTax or an email address. So let's say that's right. What about, let's say I agreed with you on what's on 357. If we move to 358, the personal information that Chrome stores won't be sent to Google unless you choose to store that data in your Google account by turning on sync. And then it goes on to some things that I think are less important. But for the part that I've read, what is your view of what the reasonable consumer would take from that? So plaintiff's own expert, and this is at SER 1058, admitted that the Chrome privacy notice, with regard to that supposed promise, used personal information in a colloquial sense and refers to personal information as information to help you fill out forms and sign into sites you visit. I'm sorry. Forgive me. Who agreed to that? This was the plaintiff's own expert. Okay. So you're saying that the reasonable user would view this holistically, would view it in what way? Well, let me... What my colleague just read for me are 358. Right. So holistically is an important point here because in the privacy policy to which each of these plaintiffs agreed, the privacy policy itself explains the at-issue data collection, the data collection that is being sued about here, said, this is ER 1380, many of our services require you to sign up for a Google account. When you do, we'll ask for personal information like your name, email address, telephone number or credit card to store with your account. So in the holistic context, having, under this legal fiction, read and agreed to that, when they then see the personal information Chrome stores won't be sent to Google unless you choose to store that in your Google account by turning on sync, it's entirely reasonable to conclude what their own expert did. But there's more than that. As a matter of law, your argument is as a matter of law, not that you can make that argument to the trier of fact that that's what a reasonable person would do, but as a matter of law, a reasonable person would interpret the personal information that Google stores by going back to what you read as to a specific subcategory of what a lot of people would view as personal information. Well, in particular, when, as we must assume they did, reading all of the disclosures because all of these disclosures, including the Chrome privacy notice, refer to sync data and the issue data as two independent sources of information. But the reasonable user has no idea what those are. No idea. How can you sync those together, so to speak? I think my answer is twofold. First, I'm going to push back a little on your premise and say that it is reasonable, and then I want to argue that we need to, if we're going to be interpreting consent and disclosures and have an economy and technology that works, we have to at least assume that they're reading what's clear. You have to find out what the reasonable user would understand. So, Your Honor, I don't think you have to be a genius or have an engineering degree from Stanford to understand that when we say Chrome browsing history, this means you're browsing history when you use Chrome, and when we say activity on sites that use Google services, that means data from those sites. And I want to walk through where we show again and again, but they're separate.  Would you read that one more time, Judge Bennett? The personal information that Chrome stores won't be sent to Google unless you choose to store that data in your Google account by turning on sync. So basically, you know, if I'm a regular person and I look at that, I probably wouldn't even go any farther. I wouldn't look at anything else because I would say, okay, I'm good with that. Well and that's true, though. It is true that the personal information that Chrome stores is not sent to Google unless you sync your account. The personal information that Chrome stores, which is described separately in every one of these disclosures, is different from activity on third-party sites and apps that use our services. That's not personal information that Chrome stores. For example, in the privacy policy, at the start of the class period, your activity, there's a heading called, and this is at ER 1382, your activity on other sites or apps, and the statements, the disclosure, to which all of these plaintiffs agreed, says, this activity might come from your use of Google products like Chrome Sync or from your visits to sites and apps that partner with Google. For your purposes, for Google's purposes, you want us to assume that the reasonable user would read the entire disclosure and would understand the interrelationship of the subparts and the syncing and the interconnection in order to really understand what they were agreeing to. Is that right? Yes. And I want to level set and explain why because what's actually going on here, okay, Sync, I think, as an ordinary person, probably as your honors or your law clerks know, is a product that has, it's not a privacy product at all. Sync is a service that says, I've got my bookmarks and my passwords on my phone, I'm going to sync them so that also when I'm on my laptop or my desktop, it auto-fills addresses and you can turn that on or off. You have a much higher opinion of the average intelligence of the computer user than do I. Well, your honor, I hope that even with my explanation, it's at least relatively straightforward. There is no- Can I ask just a question that I asked your friend? We had a motion to dismiss ruling and a summary judgment ruling. Other than the evidence about browser agnosticism, what's Google's view of what came in between the ruling on this language of the motion to dismiss and the ruling on the summary judgment that supported the summary judgment motion? Sure, and I'm glad you asked because Judge Koh did not have before her the benefit even of a full record. Judge Koh, you can look back at her motion to dismiss ruling, was not able to analyze any of the disclosures that actually manifested the consent. The account holder agreements were not before her. Judge Koh discounted the privacy policy because at that stage on the pleading, she said, well, there's an allegation or there are indications that for a certain period of time, starting up to May 2020 or before May 2020, I've forgotten, the privacy policy was not incorporated. So I'm not going to consider that. So Judge Koh never undertook the legally required holistic interpretation of the privacy policy, which spells out, we get this. The account holder agreements, which spell out, we get this. So it's not surprising if she's looking only at the Chrome privacy notice that you might say, well, maybe someone would reach this conclusion. I don't know what that is. There's more. But let me just ask you this, our friend Judge Rogers, for whom we have great respect, had an eight hour hearing trying to figure out what people understood and came up with this. I don't know who they came up with the concept of browser agnosticism. But how in heaven's name could a reasonable user have possibly thought about browser agnosticism or required eight hours to figure out what Google was saying? Yes. If that happened, if that's what had happened, Judge Smith, you'd be right to be concerned. But that's not actually how it arose. Here's what happened. And this is in, you can look at Judge Gonzalez-Rogers' order regarding the evidentiary hearing on ER 321. Essentially what happened was there was an argument about summary judgment. We were there arguing about summary judgment and class certification together, if I recall correctly. And plaintiff's counsel stood up and said, well, this collection of data is specific to Chrome. The stuff that we're suing about is specific to Chrome. And that's an important fact, would have been. And the judge said, well, there doesn't seem to be anything in the record suggesting that. That's not a disputed fact. And they said, well, it is. We didn't put it in because we didn't have an opportunity to put in a statement of undisputed fact. This has to do with the case being handed off from Judge Koh to Judge Gonzalez-Rogers. Judge Koh did not have a practice of taking statements of undisputed facts. Judge Gonzalez-Rogers did. So Judge Gonzalez-Rogers said, I'll give you a second chance, plaintiffs. Right now, I would look at it and I would say there is no indication that the data you're suing about is in any way specific to Chrome. And so it makes perfect sense that it's disclosed in the privacy policy. And she said, but I'll give you another chance. If you can prove that it's different, put on whatever witnesses you want. So there was this long hearing under Rule 56, by the way. So it's perfectly appropriate, you know, it's a 56E, so it's appropriate to do for summary judgment. In lieu of, essentially, a statement of undisputed facts, she put on their evidence and correctly said, there's no dispute. But I guess, so this is the same question I asked your friend, Mr. Shapiro. The grounds for the summary judgment order relied on the browser agnosticism. And not, it seems, on whatever the status quo before that hearing was, was a ruling that there was no genuine dispute of material fact as to consent or something else. So what are we supposed to do with that? It does, the ruling below does not rise or fall on the browser agnostic decision. Because in addition to asking a logical question, which I think any logical person would ask, which is, all right, is this something that is relevant to Chrome or not, Judge Gonzalez-Rogers specifically analyzed the Chrome privacy notice and rejected the reading that the plaintiffs offered here. And by the way, she noted throughout her decision that there were times where statements were being mischaracterized. This is on ER 27. Judge Gonzalez-Rogers said fifth, and I'm jumping to the next sentence here. Plaintiffs argue that a reasonable user reading the Chrome privacy notice would think that Google blocks all collection of the at issue data when one uses the Chrome browser. Specifically, plaintiffs focus on the statements that one doesn't need to provide any personal information to use Chrome or that the personal information that Chrome stores won't be sent to Google unless you choose to store that data in your Google account by turning on sync. To make this argument, plaintiffs completely ignore critical text and read others out of context. Importantly, the Chrome privacy notice explicitly indicates it only describes features that are specific to Chrome. What are those features, though, because a reasonable user, I'm still trying to figure out where that comes from, but a reasonable user would understand that it's the browser that's sharing the information, maybe, not that something else. How do you draw that line about specific to Chrome? Certainly, these plaintiffs didn't draw that conclusion because although in the reply brief the plaintiffs say over and over again, a normal person would start by looking at the Chrome notice, these plaintiffs never looked at the Chrome notice. So there's that, but beyond that, one of the items that we disclose we receive in the privacy policy is the browser type you're using. That wouldn't make sense if this is something that's only specific to Chrome. We say we collect various data, including user agent, browser type. So it would be an impossible standard, I think, to expect. It is absolutely true that there's a fair amount going on. As I understand it, though, you're suggesting to us that in order to understand the text at ER 358 and so on, that we have to analyze this holistically. So let's just say, arguendo, that the court, looking at this holistically, said, this is not a summary judgment kind of thing. This really needs to go to a jury so they can analyze this situation and decide what the reasonable user would decide. If we did that, would it be your preference that we reverse and send it back to the district judge to do a summary judgment hearing again? Or that we should simply send it back for trial? So first, I would say that this court, if you think that Judge Gonzales-Rogers- Again, holistically, okay? Yeah, yeah, yeah. Placed too much emphasis on the issue of browser agnosticism, and I argue that she didn't. You can affirm on any ground. And as was the case- Also reverse on any ground. Yeah, true. But as was the case in Smith v. Facebook and the recent Hemmerling case from a panel of this court, these exact disclosures, the disclosures about the data at issue were held to be accurate and sufficient to obtain consent. But they weren't the same issues, though, the reasonable user. Were they? They were, Your Honor. In Hemmerling and in the Smith case, the question was- Well, and certainly in the Smith case, it was. And in the Hemmerling case, it was a question that was- There were various claims, but there was a contract claim, and the question was, what does this language mean? Is it ambiguous or is it unambiguous? The court said, this language unambiguously discloses that Google collects the very data that the plaintiffs are suing about. Well, again, I respect you're a smart lawyer arguing your case, but if I understand you correctly, you're basically saying, hey, you've got to look at this holistically. All I'm saying is if we look at it holistically and we conclude that the reasonable user wouldn't understand it the way you do, then we come to a different conclusion, do we not? If you rule that, I want you to give us the chance- Of course, I would ask that the court not send this directly to trial, but if you're arguing that Judge Gonzales-Rogers needs to assess it under a different standard, that she used a different standard, that should be the order. Mr. Shabir, I wonder if you could provide me any help with- It does seem like a strange question, but where is this- How do we anchor the reasonable user standard in the state law that we're obligated to apply in these cases? My answer is not going to be very different from my friends, I'm not sure, but I would suggest the following, which is the decision that this court issues, depending on where it comes out, but a decision in a case like this is going to have to set a standard for companies to write disclosures. The fact that Judge Gonzales-Rogers, as I think was mentioned right at the beginning of the argument of the other side, decided the Brown case differently, I think suggests that this is a careful judge, parsing the language carefully. Brown is about an actual privacy feature. Incognito. Brown, one reasonable user, reasonable judge, what have you, might read Brown to suggest that that's about whether you're sharing information with third parties, whereas the representations here are about whether you're just sharing parties with Google. The incognito would be adding that additional privacy with respect to those third parties. Well- That may or may not distinguish it in your mind. In the Brown case, the argument that the Brown plaintiffs are making as well is you never indicated to us that when we were incognito, if we went to sites that used ads and analytics, anything would be transmitted or shared to Google. So I'll just wrap up. Wrap up, please. All right. The privacy policy disclosed the collection. The consent bump disclosed it. The account holder agreements. Plaintiffs clicked, I agree. The privacy policy, the consent bump, and the Chrome privacy notice disclosed this data collection as separate. The plaintiff's expert agreed that reasonable users would see these as two separate data flows. No person, no plaintiff here, no person ever in the record ever interpreted this language in the Chrome privacy notice to mean what the lawyers in this case argued that it means. That shouldn't be a basis to force a case to go to trial, a case that is really essentially made up for litigation, that someone thought sync was somehow a privacy policy. Nobody thinks that, and it would be unjust and inefficient to ask Google to stand trial for that. Unless they look at it holistically. I think if they looked at it holistically, they would understand exactly that the data they agreed gets collected was collected. Very well. Thank you, counsel. Let's have a little rebuttal time. Actually, quite a bit of rebuttal time. I realize we're the last case on a Friday. Just a few quick points on rebuttal. Judge Johnstone, you asked about the sort of underlying source of the reasonable or ordinary user standard. I would point you to pages 30 and 31 of our brief, where we discuss how the restatement adopts that approach, which California courts themselves follow. So I think that will give you the doctrinal grounding for why we would ask what an ordinary person would understand. And specifically, in the restatement, what are you referring to? This is the tort restatement, section 892A sub 1, and the comment H, which discuss how consent works as a matter of tort law. I think, Judge Smith, your suggestion that you read these disclosures holistically is exactly correct. I think if you were to do that, attempting to discern what an ordinary person with no specific expertise would understand, you would come to one overarching conclusion, which is that, as Judge Bennett, you quoted, the Chrome Privacy Notice clearly tells users that their information will not be sent to Google unless they think that information is not somehow some very narrow, technical, limited amount of information. On that exact page, the personal information that's included, according to the Chrome Privacy Notice, includes both browsing history, like URLs, what you type into Google as a search. It also includes cookies, which are the main kind of feature that actually track you around the Internet. It tells users, we will not send that information, what you do on the Internet, to Google unless you think. There is nothing in any of the other documents, the privacy policy, the account agreements, that says anything to the contrary. In fact, Judge Bennett, as you pointed out, the privacy policy repeatedly tells users exactly the same thing, that their information will not be sent unless they think. I think this court could perform that inquiry very easily in its opinion, reverse the district court's decision, and set this case on for trial. So from your perspective, citing, for example, what my colleague did in ER 358, and the restatement of Torch 2nd, and so on, that you feel state law buttresses your position as to what a reasonable user would understand. Sending it back to Judge Gonzalez-Rogers really wouldn't help anything, because ultimately it's a disputed issue. Correct. That's correct, Your Honor. And from your perspective, it's got to go to trial. Correct. Unless the court has any further questions. Other questions? I think not. Thanks to counsel. We appreciate it, as you can appreciate that we live in a technical era, and we get more and more of these cases, and it's very helpful to us to have very learned and able counsel to help us as we work through this. So thank you for your argument. The case that's argued is submitted.
judges: SMITH, BENNETT, JOHNSTONE